UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>



Case No.:_24-cv-6007

Theresa Krenzer

    *Plaintiff,*

-V-

Kyle Wilkins, Christopher Bonham, Van Dellon, Charles Vaas, Finger Lakes Railway, et all

                        *Defendants,*

---

### CORRECTED 42 u.s.c. § 1983 CIVIL RIGHTS & FTCA COMPLAINT

1.  This action seeks justice through injunction for restoration of rights & damages caused by employees of New York State Police, NYSOMH, ATF, Ontario Sheriff & DA's Offices, & Finger Lakes Railway through defendants' conspiratorial participation in the wrongful abduction & deprivation of Plaintiff's person, rights, property & livelihood, & that defendants' tortious acts resulted in intense & continuing pain & suffering, emotional distress & reduced quality of life for which compensation must be awarded. Plaintiff will provide evidence that Defendants, using the cover of the Interstate Task Force on Illegal Guns to rob a legal importer, conspired under color of state & federal law via violations under 42 U.S.C. §§ 1983 & 1985(2)(3) to damage her rights under the 1st, 2nd, 4th, 5th & 14th Amendments to the Constitution of the United States by committing tortious acts & crimes, & pursuant to 18 U.S.C. § 925A to restore Theresa's rights.

    On 2/14/23, in the dismissal of malicious prosecution that destroyed her life & livelihood, NYSP Bonham & ATF Wilkins ("among others") have already been found to have violated 210.35 Sworn False Statements to the Grand Jury in the 2nd[1] under Van Dellon's direction to unlawfully indict the coplaintiffs and 22-07-085A/B were ordered sealed. Per the 4/15/25 update, Interstate Task Force has refused to follow these court orders & unlawfully maintained 22-07-085A/B as a "pending" through 2025, resulting in secondary malicious prosecution (damningly fingerprinted twice under 22-07-085A)

---

[1] See 2/17/23 Decision & Order **(Exhibit 1)**

constituting ongoing malicious prosecutions, abuse of process, retaliation, rights abuses & additional RICO predicate acts, etc.

## Jurisdiction & Venue

2. This Court has jurisdiction over Plaintiff's complaint under the Constitution, 42 U.S.C. §§ 1983 & 1985,  18 U.S.C. § 925A, & 28 U.S.C. §§ 1331 & 1346. The Court has supplemental jurisdiction over any of Plaintiff's related claims under 28 U.S.C. § 1367.

3. Plaintiffs seek remedies under 18 U.S.C § 925A, 28 U.S.C. §§ 1651, 2201, 2202 & 42 U.S.C. §§ 1983, 1988. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)&(b)(2)

## Parties

4. Plaintiff Theresa Krenzer is a lifelong hunter, a Keeper of the Way of the Mandalore, & worker (Secretary-Treasurer) at business RRHRS LLC.

5. Coplaintiff Keenan Fisher (22-cv-6440) is worker-owner at RRHRS, presenting subject matter linked claims concerning the same unlawful acts.

6. Defendant **Kyle Wilkins** is an ATF Industry Operations Investigator who was assigned to the Plaintiff's LLC, whom in conspiracy to interfere with the plaintiff's legal interstate commerce under color of law, made known material false representations against the Plaintiff, her family & her clients to the ATF hearing, NYS Police[2] & Ontario court; Wilkins engineered the plaintiff's kidnapping by train on Holocaust Remembrance Day w Bonham, participated in armed robbery of plaintiff's home & LLC, attempted to intimidate the plaintiff & her partner on 8/18/22[3] into not seeking justice against him in this courtroom via SWAT, attempted to use false statements about plaintiff to secure an Order of Protection, & conspired with Ontario DA & NYSP to indict plaintiff- but was found to have violated 210.35 Sworn False Statements to a Grand Jury in the 2nd Degree[4] to do so, & is sued in his individual & official capacities with the **United States** therefore named as proper defendant to Wilkins' unlawful actions via the FTCA.

7. Defendant **Christopher D Bonham**, a NYSP Senior Investigator assigned to the Special Investigations Unit (SIU) acting concurrently as ATF Task Force Officer (TFO) under color of federal law with Interstate Task Force, sued in both his individual and official

---

[2] See Wilkin's blatantly false statements in his ATF Referral to NYS Police (Jan 25, 2022), attached as **(Exhibit 2)**
[3] See 8/18 "Warning Against Unlawful Activity" from the desk of John Devito, attached as **(Exhibit 3)**
[4] See Wilkin's blatantly false statements in Grand Jury testimony, attached as **(Exhibit 4)**

capacities, a main directing partner engaged in conspiracy to interfere with rights and commerce under color of law on & around 1/27/22, found to have violated 210.35 Sworn False Statements to a Grand Jury in the 2nd to secure an unlawful indictment against plaintiff by Ontario County Judge Dennis on 2/14/2023. Given Bonham's dual role as a state officer and TFO federal agent, interlocking liability seems to be held by **State of New York** and **United States** Government.

8.  Defendant ADA **Peter Van Dellon** having directly participated in the conspiracy against the plaintiff's rights through malicious prosecution, knowingly induced 210.35 sworn false statements in the 2nd to a grand jury by Wilkins, Bonham, Mowers & Keefe on 8/2/22, suppressed 8/18/22 bodycam footage of ATF/NYSP John Doe intimidation of plaintiff, & made baseless defamatory politically charged statements about the plaintiff to the court- collectively establishing a pattern of unethical behaviors in violation of Rule 8.4 of Professional Conduct, & is sued in his professional capacity.

9.  Defendants **Charles Vaas**, Special Assistant & **New York State Office of Mental Health Office of NICS Appeals & SAFE Act** (brev "OMH" & "NASA"), misused health records & made false material representations about plaintiff's mental health upon Bonham's request & which Wilkins admitted was evidenceless in LLC's ATF administrative hearing, engaging in deceitful misrepresentation that was prejudicial to the administration of justice in violation of Rule 8.4 of Professional Conduct, sued in his individual & professional capacities with OMH responsible fiduciary. OMH itself breached fiduciary duty via 2013 NICS misreporting scheme affecting plaintiff, and is sued its its official capacity.

10. **Pamela Keefe**, Ontario County Clerks Office, is sued in her individual & official capacities for knowingly or wantonly making false material statements to Grand Jury & participating in the conspiracy against plaintiff & others rights (Ontario County responsible fiduciary).

11. Defendant DA **James Ritts** is sued in his professional/official capacity for misconduct of allowing & advancing a malicious prosecution of the Plaintiff by his office in furtherance of the defendants' conspiracy against the plaintiff's rights & livelihood. (Ontario County responsible fiduciary)

12. Defendants within New York State Police Troop E & SIU including **Jordan Bonafede, Steven Mowers, Richard Canino, Bryan Blum, David Cerretto, Jessica Kuzdzal, Michael S Turton, Coley S Ellison, Jason D Fifield, Brian J. Ratajczak, Justin Prusak, Michael Manley, Ryan Bently, Bruce Drake, SA Lander & M Pietrzykowski**, all who acted under color of the Interstate Task Force in the kidnapping, unlawful imprisonment, armed robbery & evidence fabrication against the plaintiff, are each sued in their individual & official capacities. Kuzdzal, Ellison, Fifield & Cerretto illegally manufactured an assault rifle in the shop on 1/27/22 to fabricate evidence. Mowers provided misleading testimony to grand jury contributing to x2 210.35 violations. Bonafede, Canino, Blum, Turton, Prusak, Rarajczak, Manley, Bently, Drake, Lander & Pietrzykowski kidnapped and/or robbed the plaintiff in concert w search warrants obtained via false representations. All NYSP defendants took part in the conspiracy against the plaintiff's rights & livelihood on 1/27/22 in violation of their Oath to the US Constitution.

13. **"Interstate Task Force on Illegal Guns"** constitutes an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4), organized under color of law and announced publicly by Hochul 1/26/2022 securing LE resources from 13 States/the Federal Government, functioning with a common purpose, continuing structure, & coordinated conduct among its members, which include but are certainly not limited to ATF, FBI, NYSP & SIU, NYJTTF, MCAC, NYAG office, Ontario Sheriff office, Ontario & Onondaga DA offices, who's members & accomplices comprise the body of Defendants herein; though nominally created to combat *illegal firearms trafficking*, the enterprise exceeded its lawful scope by conspiring to target lawful coplaintiffs for their protected Constitutional expressions & exercise & interfere with a licensed FFL08/AECA LLC's engagement in lawful interstate commerce and inflict coordinated retaliation from 2021-2025.

14. "Task Force" members include Senior Special Agent **Szwejbka** (visible eating a sub on the bodycam during coercive interrogation of Krenzer at Troop E Barracks while Bonham asks "*do you consider yourself a responsible person?*" after many baseless mental health accusations and **ATF John Doe #1 & #2 & 8 NYSP John Does** to be identified from 8/18/2022 bodycam footage attempting violent & warrantless §1985(2)

intimidation of coplaintiffs at the behest of "scared" conspirator Wilkins, sued in their individual & official capacities;

15. **Attorney General Letitia James**, in her official & individual capacities, is named as a defendant for her role in supervising & overseeing the Task Force, its member agencies, its misconduct laden defense in 22-cv-6440 & the unlawful activities conducted under its authority, including the deprivation of rights, property & livelihood of the coplaintiffs;

16. **Finger Lakes Railway Corporation** is a Class III railroad enterprise (a foreign business corporation of the state of Delaware) that owns & operates 167 miles of track from its Geneva headquarters; (FGLK) is sued in its individual capacity as accomplice to Task Force's Holocaust Remembrance Day 2022 abduction, robbery & malicious prosecution.

17. Respondent **Federal Bureau of Investigation (FBI) National Instant Criminal Background Check System (NICS) Section**, named in its official capacity, for injunctive relief from this Court from NYOMH'S rights abuse;

## FACTS OF THE CASE

18. Theresa is a lifelong hunter, evidenced by her NYS hunting permit & safety courses.[5] She is not a felon, she has never been involuntarily committed to a mental institution, & she has never been adjudicated mentally deficient by a court or been a drug addict. In 2021, she became a religious Keeper of the Way. She became a certified Range Safety Officer in 2025 & is eager to become a concealed carry/home defense instructor & continue her career.

19. In 2013, Krenzer voluntarily visited St. James Hospital post sexual assault & was victim to NYSOMH's unconstitutional Voluntary NICS reporting policy. Krenzer has never applied for a pistol permit in any state, so was never notified let alone given a hearing by the state per NYMHL § 9.27.

20. In June 2018, I chose to take control of my body- for a multitude of reasons including the 2013 SA & being stuck in an abusive relationship that ended in 2020- and undergo a tubal ligation (nonreversible fallopian removal) surgery. Excellus Blue Cross required me to wait 30 days & undergo a mental health evaluation with two doctors who certified I am sane. I wanted to be entirely in charge of pregnancy even in horrible situations.

---

[5] Hunting Permit & Hunter Safety Course Card, **(Exhibit 5)**

21. Plaintiff's partner Fisher, & friend Flowers launched their LLC on 1/11/21, applying for state business, FFL08 license, DBA, & NYS dealer/gunsmith permit, publishing in the papers, etc. Plaintiff helped partner with rides & support & became more interested in the business as it grew.

22. On 8/6/21, Wilkins completed the *one* warrantless inspection allowed per year per GCA. Krenzer met Wilkins when she arrived from her job (Epic Wine) to pick up Fisher.

23. Krenzer joined LLC as a worker-owner in August 2021, happily reported as Secretary-Treasurer (not an FFL/RP) on the AECA license application on 8/20/21, & was approved by the ATF as an Arms Exports Controls Act international contractor by 9/9/21.

24. With the newfound economic freedom of being young business owners, Krenzer & Fisher had been doing research & saving for in vitro fertilization (IVF) treatments to start a family. CNY Fertility was chosen & the first appointment for treatments was scheduled 2/17/2022. The couple attended 3 appointments. [Documentation & continuing bills available for Judge].

25. On 8/26/21, Krenzer attempted to purchase a lower receiver from her shop for workforce compliance training. This was Krenzer's first ever modern firearms purchase (her firearms are heirloom or blackpowder), & she was denied transfer by NICS due to NYSOMH's erroneous 2013 report. Krenzer & Fisher contacted Wilkins for advice as IOI, following Wilkin's directions to fix her status in the NICS through appeal as she met no 922(g). Wilkins told Krenzer that as she had no FFL responsibilities (aka *transfer of firearms*) that she was perfectly fine to continue her secretarial work. Krenzer stopped hunting & target shooting (religious activities) with her partner, but continued her work per Wilkin's reassurances. Krenzer attended her first international AECA business meeting with Tula via Zoom call on 10/22/21 while Fisher attended in person in Miami.

26. 10/22/21 also marked the beginning of Defendants' "investigation."

27. On 12/21/21, Wilkins & Cirencione conspired by email/phone to breach fiduciary duty & not approve Fisher's paid *shall issue* permits to manufacture an erroneous probable cause for a warrant.

28. 1/20/2022 Bonham requested NYSOMH Vaas to provide a letter stating Krenzer was "involuntarily committed" to a hospital in 2013/14 [Exhibit 6]. This letter is a false material statement, & the records provided by Vaas merely state that Krenzer visited the

hospital for Voluntary treatment (for care after a sexual assault) on those two occasions a decade ago, & not that either were involuntary commitments to a mental institution.

29. Using false material statements Bonham acquired multiple warrants on 1/26/22 as Hochul publicly announced Interstate Task Force on Illegal Guns.

30. 1/27/22, defendants under color of Interstate Task Force on Illegal Guns abducted & unlawfully imprisoned Krenzer & Fisher with freight train "traffic stop" & robbed the LLC and her home, trashing both properties & robbing her vehicle. NYSP manufactured an assault rifle in workshop to fabricate evidence against plaintiff & LLC, and fabricated "marijuana" and "assault weapons" claims at plaintiff's home.

31. Defendants maliciously prosecuted Krenzer on 58 assault weapons charges in bad faith, & coplaintiff on charges based on her supposed insanity.

32. Many defendant-produced docs stand as evidence of false representations, with times, date & pertinent lies therein. We've highlighted all the lies in red & will submit these "investigative" docs to discovery for full scope of Hochul's Interstate Task Force on Illegal Guns' assault of licensees. It is a 300+ page book of sworn statements, false evidence & bureaucratic incompetence before any notes the public's interjection.

33. 8/2/22 Wilkins, Bonham etc provided sworn false statements to the grand jury to indict, & Wilkins also provided false statements to ATF kangaroo revocation/fine hearing. ATF & state dropped all false mental health, illegal sales & marijuana accusations.

34. 8/16/22 Wilkins came to Krenzer's home to revoke FFL under "Zero Tolerance" policy (the ZTP itself revoked 4/7/25), now saying Krenzer was "unreported RP" ("Responsible Person") because during 1/27/22 interrogation Task Force asked if Plaintiff considered herself responsible after many questions about her mental health (she had no knowledge of the capitalized ATF term). An obvious misrepresentation by Wilkins, she never ran a background check for or transferred a firearm (the only FFL/RP duties). FEDEX and UPS both confirmed Covid safety policy had drivers signing for all businesses, and all restricted transfers were PvP to Fisher as FFL/"RP" only. Wilkins' lies were read aloud by Fisher & IOIs were told they would seek Article 78 & justice against him & expose his lies in court.

35. 8/18/22, authorized by DeVito, Wilkins sent ATF/NYSP John Does to intimidate the couple into not suing for Wilkins' actions, violating 1985(2) via violence & arrest threat.

Van Dellon refused defense counsels' bodycam requests & was denied slanderous restraining order requests for Wilkins against Krenzer & Fisher.

36. 10/14/22 countersuit 22-cv-6440 filed vs defendants to challenge ZTP, etc.

37. 2/14/23 malicious prosecution was dismissed; Wilkins & Bonham found guilty two counts 210.35 in 22-07-085A & B.

38. 2/17/23 Judge Dennis produces Dismissal Order noting Defendants' 210.35.

39. 2/17/23 Judge Siragusa's Order says his research says we're guilty, repeating DA's flawed theory, ignoring facts, & inserting extrajudicial source & Court's biases/prejudices. Siragusa would continue to chill justice in both 22-cv-6440 & 24-cv-6007 until 2/7/25.

40. 10/18/23 FBI Public Corruption Unit secured release of a few items, NYSP refused most, continuing rights abuses (officer Spencer & Unknown Defendant halted return).

41. NYSOMH & Hochul's Interstate Task Force on Illegal Guns' kidnapping, robbery, malicious prosecution & tortious acts have effectively bankrupted coplaintiffs legal business, putting couple in massive debt as provided by financial records, debts & eviction case, leaving her rights irreparably damaged & giving motion to the following claims for relief:

**1ST CLAIM FOR RELIEF: FALSE ARREST/UNLAWFUL IMPRISONMENT**

42. This claim is against WILKINS, VAAS, RITTS, RATAJCZAK, BONHAM, BENTLY, DRAKE, BURKE, LANDER, SZWEJBKA, PIETRZYKOWSKI, BLUM, BONAFEDE, MANLEY & FGLK in their individual & official capacities, & to all Defendants via *Pinkerton*, at all times relevant acting under color of the INTERSTATE TASK FORCE.

43. All previous statements & claims are incorporated within.

44. On 1/27/22 the facts establish an actionable Fourth Amendment False Arrest/Unlawful Imprisonment claim, with defendants Bonham, Wilkins, Cirencione leading defendants' conspiracy to deprive plaintiff's rights by (1) Wilkins, Bonham, Bently, Drake, Lander, Szwejbka, Pietrzykowski, Blum, Bonafede, Manley, Ratajczak & Finger Lakes Railway intending to confine plaintiff's travel via train kettle "traffic stop" & transport her to jail on Holocaust Remembrance Day 2022 while conspirators robbed her home & business & (2) plaintiff was conscious of this traumatic confinement & every hardship & wound

defendants' acts have directly caused since, (3) plaintiff did not consent to restraint, armed abduction or 18+ hours held by abductors, & (4) Probable cause is an imperative element of a legal arrest & was not established by the defendants malicious conspiracy against Krenzer & her partners & customers rights under color of law, nor could cause be found in the conduct of their business dealings nor exercise of rights of family & loose community associations.

45. Plaintiff is entitled to relief & damages, including but not limited to compensatory & punitive damages against defendants for public humiliation, loss of time & interruption of business, injury to reputation, accrued & future pain & suffering, plus any relief the Court finds just & proper.

## 2ND CLAIM FOR RELIEF: MALICIOUS PROSECUTION

46. This claim stands against BONHAM, WILKINS, KEEFE, CIRENCIONE, VAN DELLON, VAAS & ALL STATE DEFENDANTS, to co-conspirators under *Pinkerton* & FLGK per *United States v. Price;* Defendants at all times relevant were acting under color of law as INTERSTATE TASK FORCE.

47. All previous statements & claims are incorporated within.

48. As per section 1983, (1) the Defendants were involved in the False Arrest/Unlawful Seizure under leadership of Bonham, Wilkins, Cirencione, Van Dellon kowledgably initiated a prosecution against Krenzer & (2) lacked probable cause to believe it would succeed because of the LLC's FFL08 Import & AECA licenses granting 265 possession exemption, relying on (a) Wilkins, Bonham & Vaas' false material statements [Exhibits 4, 6, & 7], (b) Wilkins, Bonham, Kuzdzal, Ellison, Fifield fabricating supposed evidence of criminality by illegally manufacturing an assault rifle [Exhibit 8a & 8b] at 1 East Main Victor NY & misrepresentation of any inventory as illegally possessed by the FFL or workers, (c) Bonham, Wilkins, Canino, Prusak, Turton fabricating supposed evidence of criminality with knowledgeable false reporting of assault weapons, "30 round magazines" & "marijuana" [Exhibits 9] at Krenzer's apartment continuing up to the 2/2/24 affirmations of 22-cv-6440 defendants, all via conspiracy to deprive Krenzer & her partners' rights & assault their LLC & its clients, & (3) defendants acted with malice, pursuing the case for over a year in Ontario County court (4) until the prosecution was terminated in completely innocent & law abiding Krenzer's favor on 2/14/23 citing Bonham & Wilkins ("among others") violated 210.35 Sworn False Statements to a Grand Jury in the Second Degree to indict [Exhibits 1], & that there was (5) a sufficient restraint of constitutional liberties (1st, 2nd, 4th, 5th, 14th) post-arraignment 1/28/2022 to implicate Krenzer's 4th Amendment rights enough to involve FBI Public Corruption Unit to mediate, & per evidence in the 415 Update Defendant Task Force has refused to follow sealing orders on 22-07-085A/B & are using the closed cases to generate new malicious prosecutions.

49. Per *Hector v. Watt*, plaintiff's claim is actionable as she is innocent of all 58 felony possession crimes charged in the underlying prosecution, as well as dismissal of the counts targeting her in Wilkins' ATF hearing (including coerced & improper confession she is an "Responsible Person" from 1/27/22 interrogation) [Exhibit 1, 14, 15, & 16].

50. New Evidence [415 Update] proves Defendants have refused to follow 2/17/23 sealing orders & are using unlawfully maintained fabricated evidence to affect new malicious prosecutions- establishing an actionable **Abuse of Process Tort** as (1) Task Force elements maintained 22-07-085A/B to continue abuse culminating in secondary unlawful issue of criminal process (270.21 & unlawful seizure 12/5/24), (2) intent to do harm without excuse or justification, (3) in order to obtain a collateral objective that is outside the legitimate ends of the process (retaliation, rights abuse & disarmament). This 131 days of abuse threw off my 12/13 wedding plan.

51. The blended discriminatory animus demonstrated by defendants also brings this malicious prosecution within the scope of § 1983 as "a malicious prosecution intended to deprive a person of the equal protection of the laws" as per *Usher v. City of Los Angeles*. Liability for the tort of malicious prosecution also gives rise to liability under 42 U.S.C. § 1983. See *Cook v. Sheldon*, 41 F.3d 73, 77-79 (1994).

52. Misreporting Krenzer, Mckay, Susman, Richey & the half million+ other Voluntary patients to the NICS had no medical or public safety purpose; it was a scheme to enrich NY gov while removing the 2A rights of citizens & create opportunity for future prosecutions. In '13, NYSOMH's original unconstitutional NICS report began & fueled Hochul's Interstate Firearms Task Force's witchhunt against Krenzer & her livelihood in '22, & per *McArdle v. Tronetti*, 961 F.2d 1083,1088 (3d Cir. 1992) a claim of improper involuntary commitment against a state actor may be brought as a claim of malicious abuse of process or malicious prosecution.

53. Plaintiff is entitled to relief & damages, including but not limited to punitive & compensatory damages against defendant for Lost Opportunities, Missed Compensation, Pain & Suffering, over a decade of Constitutional abuses by NYOMH, plus an admonishment of Vaas & Van Dellon/Ritts' misconduct-prone Offices, & any other relief the Court finds just & proper.

**3RD CLAIM FOR RELIEF: SEIZURE BEYOND SCOPE OF WARRANT**

54. This claim stands against BONHAM, CANINO, CERRETTO, KUZDZAL, TURTON, ELLISON, FIFIELD, WILKINS & BURKE (United States) and to all Defendants under *Pinkerton*, at all times relevant acting under color of law as INTERSTATE TASK FORCE.

55. All previous statements & claims are incorporated within.

56. On 1/27/2022, defendants (1) seized property beyond the mandatorily "stolen," "unlawfully possessed" or "used in the commission of an offense" property so requested in the warrant including (a) Wilkins, Bonham, Turton, Cerretto, Canino seized my tv tablet, laptop, phones, cbd flower ($200) from my apartment, (b) Bonham, Wilkins, Kuzdzal, Ellison & Fifield seized personal sales showcase inventory like Umarex nonlethal double-barreled T4E TS 68cal $CO_2$ marker, plus my personal 3d printer, workers tools, & the tax & business documents necessary to operate my livelihood along with the legal inventory, (c) on 1/28/22 Bonham & Kuzdzal seized our Macbook Pro & more legal LLC inventory from my seized Chevy Trax; (2) defendants discovered no fruits, instrumentalities or evidence of any crime over the course of search for legitimate scope nor in their year long investigation, & (3) no officer's safety was threatened by any of Krenzer's lawful actions as a licensed AECA wardog, nor was she in possession of illicit items, & she has been proven innocent of all of defendants' baseless accusations of insanity, drug use, illegal arms sales, militia training, etc.

57. Plaintiff is entitled to relief, including but not limited to punitive & compensatory damages, return of all personal property, & any other relief the Court finds just & proper.

## 4TH CLAIM FOR RELIEF: BREACH OF FIDUCIARY DUTY I

58. This claim stands against VAAS & BONHAM, & to all conspirators under Pinkerton, Defendants at all times relevant acting only under color of law. Courts have held nonfiduciaries criminally liable for frauds related to intangible rights when a co-conspirator was a fiduciary. *United States v. Alexander*, (an intangible rights scheme is cognizable when at least one of the schemers has a fiduciary relationship).

59. All previous statements & claims are incorporated within.

60. The facts establish an actionable Breach of Fiduciary Duty claim against Charles Vaas & NYSOMH, displaying that on 1/20/22 Vaas, a NYSOMH non-doctor "Legislative Coordinator" with the clandestine Office of NICS Appeals & SAFE Act, (a) was agent acting under a power of attorney with a fiduciary relationship to the NYSOMH, which necessarily has special fiduciary duty to plaintiff & her medical welfare as a previous Voluntary patient, that (b) Vaas breached NYSOMH's fiduciary duty to plaintiff in conspiracy with Bonham by providing his False Material Representation [Exhibit 6], punishing her for voluntarily seeking NYSOMH services for a traumatic event in 2013 & (c) plaintiff's rights, health & livelihood suffered irreparable damages as a result of Vaas' malicious & wantonly reckless act, & (d) the defendant's conspiratorial breach of this

fiduciary duty to further the Defendants' conspiracy directly caused plaintiff economic & emotional damages, provided as a material false representation to secure warrant to affect rights violations on 1/27/22.

61. As result of Vaas & Bonham's malicious conduct, Plaintiff has suffered specific damages, including but not limited to reputational, emotional pain & suffering, lost wages, public humiliation having to talk about the 2013 SA let alone be maliciously prosecuted for seeking help, & social alienation.

62. As in *McKay*, in 2013 Krenzer's Second Amendment rights were damaged indefinitely by purposeful misreporting of her Voluntary hospital visit as "involuntary Commitment to a Mental Institution" to the NICS to, unarguably, profit NY not benefit public safety.

63. The mass unconstitutional abuses inherent to NYSOMH's misreporting scheme previously raised & ignored in the *McKay, Susman, Richey* cases have no better study than their weaponization against Krenzer, as she is the intersection between a mentally healthy individual who Voluntarily seeks professional aid when traumatized & a firearms industry professional who may speak on behalf of the ½ Million+ similarly damaged by the state. Vaas is not a medical professional & not entitled to Statutory or "quasijudicial" Immunity under §9.46, & Krenzer establishes facts showing (1) that NYSOMH & Vaas' False Material Representations in 2013 & 2022 respectively both violated Krenzer's statutory & constitutional rights, & (2) that Krenzer's rights were very 'clearly established' at time of the challenged conduct (*Ashcroft v. al-Kidd*, 131 S.Ct. 2074.)

64. NY law explicitly protects individuals from being penalized for seeking mental health treatment, & erroneous NICS reports are particular constitutional injuries-in-fact. Defendants' 2013 & 2022 Breaches violate New York Mental Hygiene Law § 33.01: "No person shall be deprived of any civil right [] solely by reason of receipt of services for a mental disability nor shall the receipt of such services modify or vary any civil right of any such person, including but not limited to [] rights relating to the granting, forfeiture, or denial of a license, permit, privilege, or benefit pursuant to any law" herein the right to bear arms.

65. MHL § 22.03 reinforces that rights cannot be abridged based on mental health treatment or program participation & using §§ 9.13, 9.39, etc holds as a permanent federal disqualifier directly abridges citizenship & civil rights.

66. NY's systemic use of MHL §§ 9.13, 9.39, etc to trigger federal firearm bans under § 922(g)(4) is not only constitutionally invalid under Bruen, but has always been unlawful under NY's own mental hygiene statutes of 1972.

67. As of July 1, 2024, New York State's estimated population was approx 5.84% of the U.S. population. However, New York's contribution to the NICS is disproportionately higher- as of January 3, 2023, New York had 532,321 "active records" in the NICS Indices, accounting for about 8.5% of all state-submitted records & raising red flags of overreporting, systemic misclassification, & NY OMH Office of NICS Appeals & SAFE Act committing fraud upon the federal government via a mass false reporting scheme under color of law forming a pattern of racketeering activity under 18 USC §§ 1343, 1001, 371 in each case that requires US AG investigation.

68. Plaintiff is entitled to relief including but not limited to punitive & compensatory damages, an Order to NICS & NYSOMH directing corrective audit & restoration of firearms rights for Krenzer & her proposed Mentally Healthy Class, written apologies to all affected by NYSOMH's systemic NICS misreporting scheme, & any other relief the Court finds just & proper.

### 5TH CLAIM FOR RELIEF: BREACH OF FIDUCIARY DUTY II

69. This claim stands against CIRENCIONE, WILKINS, BONHAM & all co-conspirators under *Pinkerton*, Defendants at all times relevant acting under color of law as INTERSTATE TASK FORCE.

70. All previous statements & claims are incorporated within.

71. The facts establish an actionable Breach of Fiduciary Duty claim against Cirencione & Ontario County Sheriffs Office, displaying that (a) The Ontario Sheriff was acting as the direct fiduciary licensing agent to grant of the plaintiff's LLC's state firearms permits, which were only necessary to sell pistols & ny "assault" weapons in state, & (b) Cirencione breached this fiduciary duty to plaintiff's partner in conspiracy to deprive the LLC workers including the Plaintiff of rights by refusal to service shall issue permits to invent erroneous cause for plaintiff's abduction & robbery, (c) Krenzer's livelihood suffered irreparable damages as a result of defendants withholding of her partner's unnecessary shall-issue $35 state permit to the point she had to divest ownership, & (d) the Sheriff's conspiratorial breach of this fiduciary duty at the request of NYSP & ATF directly caused plaintiff damages as its effect was eventually held as the sole matter in her malicious prosecution (after insanity accusation from 4th claim dropped).

72. Plaintiff is entitled to relief & damages, including but not limited to Order to Ontario Sheriff & Keefe restraining further misconduct, granting of any pending & future *shall issue* permit applications to all citizens + any relief the Court finds just & proper.

## 6TH CLAIM FOR RELIEF: FRAUDULENT MISREPRESENTATION

73. This claim stands against BONHAM, WILKINS, VAAS, CIRENCIONE, VAN DELLON, RITTS, THOMAS, MOWERS, KEEFE, BURKE & CURTIS, & all defendants under Pinkerton (state employees) or under *United States v. Price*, etc (FLGK railroad), Defendants at all times relevant acting under color of law.

74. All previous statements & claims are incorporated within.

75. The facts serve to establish a pattern of Fraud or Fraudulent Misrepresentation under New York law showing (1)(a) Wilkins, Bonham, Vaas, Cirencione, Ritts, Van Dellon knowingly & willfully made multiple material false representations to secure a faulty search warrant from magistrates & fabricate evidence, joined by Mowers & Keefe to secure unlawful indictment from the Ontario Grand Jury, & that Ritt's office has a history of admonishment for prosecutorial misconduct, (b) Kuzdzal, Ellison, Cerretto, Fifield & Bonham are pictured illegally manufacturing an AR15 assault rifle to fabricate material evidence on 1/27/22 at 1 East Main; (c) Wilkins knowingly & willfully made material false representations to the ATF in his kangaroo "administrative hearing" & 1/25/22 ATF referral; (d) Van Dellon & Wilkins knowingly made material false representations to attempt to secure a TRO to further damage plaintiff & supress bodycam of Wilkins men's 8/18/22 intimidation attempt; & (g) the 2013 material false representations made by OMH "statistical reporting" policy to NICS that damaged plaintiff's constitutional rights without due process, that (2) the defendants intended to defraud the plaintiff[s] of her livelihood, rights & freedom with the goal of plaintiff's enslavement under the 13th amendment for 5 years with farcical plea bargain offer; that (3) as a licensed FFL08 Import & AECA dealer in its first year of business, the plaintiff's LLC reasonably relied upon the honest, unbiased, non-malicious representations of IOI Wilkins & Sheriff Cirencione, but instead they conspired to erroneously prosecute via failure of fiduciary duty & false representations made about the plaintiff to state and/or federal bodies, & (4) the plaintiff, her partner, business, clients & the reputation of the ATF, NY law enforcement & Ontario DA Office suffered clear damage as a result of the People's reliance on Hochul's Interstate Firearms Task Force to act without malice.

76. Per *Phillips v. Woodford*, 267 F.3d 966, 984-85 (9th Cir. 2001) "It is well settled that the presentation of false evidence violates due process." "A defendant violates due process when he uses false evidence to deprive a criminal defendant of his liberty in some way." *Coleman*, 925 F.3d at 344; *Whitlock* v. *Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012).

77. "No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee. [That] would make a mockery of the notion that Americans enjoy the protection of due process of the law & fundamental justice" (*Ricciuti v N.Y.C. Transit Authority*).

78. Plaintiff is entitled to relief in the form of compensatory damages for inconvenience, costs, loss of livelihood, reputational damages, plus punitive damages against the individual defendants whom fabricated evidence or provided False Material Representations, & Court's admonishment of the Ontario DA's office for shocking continued misconduct (*Rule 8.4: Misconduct, 3.1: Meritorious Claims, 3.3: Candor, Rule 3.8(a): Special Responsibilities of a Prosecutor*) following up its last 2017 admonishment, plus any other relief this Court finds just & proper.

### 7TH CLAIM FOR RELIEF:  FABRICATION OR DELETION OF EVIDENCE

79. This claim stands against WILKINS, CIRENCIONE, BONHAM, TURTON, CANINO, PRUSAK, CERETTO, Kuzdzal, ELLISON, FIFIELD, DEVITO, 8/18/22 ATF & NYSP JOHN DOES, VAN DELLON, & to all co-conspirators via *Pinkerton*, & Defendants at all times relevant acting under color of law as INTERSTATE TASK FORCE.

80. All previous statements & claims are incorporated within.

81. It is evidenced that (1) Wilkins, Bonham & their TF conspirators continued their investigation of Krenzer despite the fact that they knew or should have known that Krenzer was innocent & exempt as proven 2/14/23; (2) Defendants used investigative techniques that were so coercive & abusive that they knew or should have known that those techniques would yield false information, with the NYSP & ATF abducting & interrogating Krenzer about her mental health & then immediately asking if she considered herself to be a "responsible person", which she did not know meant "FFL", with Wilkins using that coerced, confused statement to justify the revocation of the LLC's FFL08 for her being an "unreported RP" despite her not being an FFL in any capacity & (3) evidence establishes that Krenzer & others have been deeply & irreparably harmed by these actions under color of law since 1/27/22 with no cessation.

82. Bonham & Vaas produced a materially false statement [Exhibit 6, & 7] about the plaintiff. Wilkins & Bonham fabricated baseless accusations in the ATF referral to NYSP [Exhibit 2] & Search Warrant Applications [Exhibit 10] respectively. ATF & NYSP using "mental health" as an attack vector predate the false statement produced by Vaas, & a search warrant for a licensed Importer for "possession of assault weapons" would factually not be supported by probable cause absent defendants' falsified evidence.

83. Despite ATF's June 2021 guidance to LEOs/FFLs & her conversations with Wilkins about carrying CBD products, Wilkins, Burke, Bonham, Turton, Prusak & Canino fabricated "marijuana" accusations while seizing CBD flower beyond scope of warrant from plaintiff's apartment. "When a police officer creates false information likely to influence a jury's decision & forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, & the harm occasioned by such an

unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). "Marijuana" accusations were dismissed.

84. Wilkins, Bonham, Mowers & Keefe provided false testimony concerning the law, Krenzer, her LLC & coworkers' licensing to Ontario Grand Jury at Van Dellon's direction to unlawfully indict, violating 210.35. [Exhibit 1, 4]

85. TF Defendants caused Krenzer nearing 3 years of irreparable constitutional harms beyond 1/27/22 false arrest including the full cessation of her 2A rights, livelihood, Tenet I religious practices, or any other livelihood indefinitely from incurred damages, & the multiple instances of fabrication of evidence to further their conspiracy were proximate causes of this deprivation of rights & her property. See, e.g., *Hoyos v. City of New York*, 650 F. App'x 801, 803 (2d Cir. 2016).

86. As already proven by the Ontario Court finding Wilkins & Bonham ("among others") guilty of 210.35 & presenting knowingly fabricated evidence/false material representations about Krenzer & her partner to the grand jury resulting in unlawful indictment, "more than a reasonable likelihood that the false evidence could have affected the judgment of the jury" exists with the Ontario Court stating [Exhibit 1] that these defendant's false statements *did* affect the grand jury.  See *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997).

87. Plaintiff is entitled to relief & damages, including but not limited to compensatory & punitive damages, plus an Order to ATF & NYSP to surrender 8/18/22 Bodycam & John Doe names to Discovery, & any other relief the Court finds just & proper.

## 8TH CLAIM FOR RELIEF: CONVERSION TORT

88. This claim stands against BONHAM, WILKINS, CIRENCIONE, VAN DELLON, RITTS, THOMAS, & COUNT 3 defendants, & all co-conspirators under Pinkerton (state employees) & FLGK railroad under *United States v. Price*; Defendants at all times relevant acting under color of law as INTERSTATE TASK FORCE.

89. All previous statements & claims are incorporated within.

90. Facts serve to establish an actionable Conversion Tort via (1)(a) the plaintiff's clearly established interest & possessory rights to her unlawfully seized personal property in Count 3 [macbook, 3d printer, phones, etc](b) her 5th & 14th amendment livelihood-related interest held in her showcase inventory [Umarex] & LLC's possessory

rights to its unlawfully seized Means & inventory plus the thousands of dollars spent by the workforce to secure business licensing from the offending agencies to affect their work & (2) defendants' dominion over the property or interference with it caused degradation of her rights & livelihood. *Truax v. Raich*, 239 U.S. 33 (1915) holds "The right to earn a livelihood & to continue employment unmolested by efforts to enforce void enactments is entitled to protection in equity in the absence of an adequate remedy at law." This fundamental right & the instrumentalities of her livelihood were seized from plaintiff & her rights irreparably harmed by the intentional acts of the defendants.

91. 10/18/23, FBI Public Corruption Unit was able to secure release of $740.68 USD 3d printer, tv, & a few other items, but the 3d printer was returned broken & is unusable. This was an article of Plaintiff & partner's Mandalorian faith meant for forging Armor.

92. Defendants' acts are reminiscent of those in *United States v. Grimes* 18-CR-6101 CJS (W.D.N.Y. May. 1, 2020), conversion also achieved by Theft of Firearms from the Business of a Federal Firearms Licensee in violation of 18 U.S.C. § 922(u).

93. Plaintiff is entitled to relief & damages, including compensatory damages for loss of use & an immediate injunction directing Count 3 Defendants to replace plaintiff's broken forge (a Creality 10 S5 with CR Touch Leveling 500mmx500mm build plate) with a quality industrial 3d printer of equal or larger bed-size (19.685 cubic inches), plus punitive damages for defendants' misconduct, & the established, standard remedy of an Order from the Court that all unlawfully seized & converted 22-07-085 property be delivered back to rightful owners, plus any further relief the Court finds just & proper.

## 9TH CLAIM FOR RELIEF: CIVIL CONSPIRACY

94. This claim stands against, led by WILKINS & BONHAM, all Defendants, whom at all times relevant to the conspiracy were at all times relevant acting under color of law as INTERSTATE TASK FORCE.

95. All previous statements & claims are incorporated within.

96. Establishment of the actionable Torts establishes a claim of Civil Conspiracy, demonstrating the primary torts, plus four elements of (1) agreements between two or more parties to violate plaintiff's rights via (2) overt acts under color of law in furtherance of the agreement, including (a) breach of fiduciary duty, (b) fabrication of evidence, (c) sworn false statements, (d) kidnapping & robbery (unlawful seizure of persons, property, livelihood) & (e) multiple state torts; that (3) defendants intentionally participated in furtherance of conspiracy to maliciously prosecute plaintiff; & (4) defendants' malicious actions caused the resulting injury, inconvenience, economic damage, personal suffering to plaintiff, & irreparable damage to her rights & privileges secured by the Constitution of the United States, GCA & FOPA.

97. As per *Rose v. Bartle*, Wilkins, Bonham, Van Dellon, Mowers, Keefe & conspirators procured Task Force's Grand Jury indictment of the plaintiff via fraud (210.35 Sworn False Statements), so this count is sufficient to survive dismissal on that basis alone.

98. *Hinkle v. City of Clarksburg* holds that absent an underlying constitutional violation, no §1983 liability attaches to a supervisor; ATF supervisors Curtis & DeVito took part in the conspiracy directly through Wilkins' "administrative hearing", signing off on robbery of clients, & sending a SWAT team to plaintiff's home on 8/18/22 in attempt to intimidate plaintiff out of pursuing her lawsuit. While Vaas took part in the conspiracy directly furnishing false statements for Bonham, NYSOMH long ago "implemented unconstitutional policies that causally resulted in the constitutional injury."

99. Within Police documents like Wilkins' referral [Exhibit 2] & Bonham's Search Warrant application [Exhibit 10], defendants state they maintained wire contact (phone & email) to plan their conspiracy with the Sheriff, Vaas, the DA's office, & each other. A full record of conspiratorial wire communications should be available for discovery via Court order.

100.  [Exhibit 11] (at 12:56:02; AXON BODY 3 X60A2819U, etc) is compelling evidence of conspiracy; COUNT I DEFENDANTS routinely parrot **"Member Conference?"** & then mute all bodycams to collude while searching the plaintiff, her partner & their vehicle. "Member Conference" obviously referred to membership in the Task Force enterprise. *Most* of the footage is suspiciously muted. NY § 234 does not appear to have provision for muting bodycam during an arrest. NYSP "BWC" Public Policy (05/18/21) states under B(2)b(2) that the "bwc" must remain active for "all searches of persons & property" & only affords officers the ability to mute their "bwc" while "disengaged" or in court. Plaintiff raises the legal question: is defendants' widespread use of mute on an active "arrest" outside of B(2)(d)(1,2) compliant with § 234, or are "Member Conferences" further evidence of conspiracy, misconduct & abuse of process?

101.  People of New York would benefit from the Court's declaratory ruling on BWC policy.

102.  As of April 15, 2025, coplaintiffs present direct evidence that the conspiracy continues in violation of Judge Dennis' Sealing Order (2/17/23), as malicious charges from 22-07-085A/B were left "pending" & retained materials used to justify retaliatory

false instruments in CR-13148-24 dismissed after 131+ more days of damage to the

co-plaintiff's rights, commerce, reputation & religious expression- committing new overt

& retaliatory acts to further Task Force's conspiracy in violation of court order.

103.    The 415 Update evolved facts of the 2021-2025 conspiracy satisfy an **8th Amendment Claim of Cruel & Unusual Punishment via Malicious Abuse of Process, 1st Amendment Targeting, & Retaliatory Prosecution** against TASK FORCE as (1) per *Hope v. Pelzer,* 536 U.S. 730, 738 (2002) or *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) the Task Force defendants have subjected coplaintiffs to objective conditions that pose a substantial risk to our dignity, liberty, & well-being; that (2) Defendants acted with *deliberate indifference* to Coplaintiffs' constitutional rights, knowingly using official power to prolong suffering, humiliation, & economic hardship per *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) & *Whitley v. Albers*, 475 U.S. 312, 320 (1986) in federal court & new malicious prosecution; & (3) Defendants used their authority not to prosecute crime, protect public safety or serve justice, but to extrajudicially Punish Coplaintiffs for engaging in protected interstate commerce, protected speech, religious practice, & civil rights litigation (22-cv-6440, 24-cv-6007), attempt to Intimidate & exhaust coplaintiffs through threats of re-arrest & prolonged court burdens, Obstruct relief in federal court through continued fraudulent filings & misconduct, Obstruct Justice by keeping sealed false felony charges "pending", & Damage Plaintiffs' business, mobility, & legal reputation through bad-faith process abuse, as per *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) even where no physical injury is shown, malicious or sadistic use of governmental process to cause harm is actionable under 8th Amendment.

104.    Plaintiff requests declaratory relief, compensatory & punitive damages, & further injunctive relief to bar future malicious filings, unlawful seizures, & retaliatory prosecutions under color of law, with the egregious acts of the defendants on this claim in line with precedent established in *Komlosi v. New York State OMRDD*, 64 F.3d 810 (2d Cir. 1995) wherein Court upheld award of $6.6 million in compensatory damages & $10 million in punitive damages for malicious prosecution & civil rights violations arising from knowing abuse of process by government officials.

## 10TH CLAIM FOR RELIEF: TORT OF TRESPASS

105.    This claim stands against Bonham, Wilkins, Burke, Kuzdzal, Fifield, Ellison, Turton,

Prusak, Canino, at all times relevant acting under color of law as INTERSTATE TASK

FORCE, & Wilkins/Burke again for three warrantless inspections within plaintiff's

business premises in its first six months open, acting under color of federal law in

violation of the GCA & FOPA to conduct warrantless investigations ("fishing

exhibitions"), & the Task Force's 8/18/22 ATF & NYSP John Does, acting under the

color of federal law in violation of 1985(2) Intimidation.

106.    All previous statements & claims are incorporated within.

107.    On 1/27/22, to achieve the goals of damaging plaintiff's & others' civil rights & property & Interfering in Interstate Commerce, Defendants Bonham, Wilkins, Kuzdzal, Fifield, Ellison, Turton, Prusak & Canino's actions in furtherance of the conspiracy satisfy the tort of trespass with: (1) plaintiff's control of apartment & LLC premises impeded on by (2) defendant's intentional, reckless, or wanton entry onto the properties on 1/27/22 with (a) Bonham, Ellison, Fifield, Kuzdzal & Wilkins trespassing upon the shopfront at 1 East Main street & (b) Bonham, Turton, Prusak, Canino, Wilkins, Burke, 2 ATF John Does, Sgt Wagner, & others known & unknown trespassed upon 424 E Main street address, with (3) lack of permission for the entry to the properties & a warrant secured with false material representations; noting the (4) harm to plaintiff including theft of inventory & treasury effects of livelihood, seizure of her personal property & constitutional rights, emotional damages from continuing seizure & abuse, & (5) the defendants' misconduct was a substantial factor in causing the continuing harm to Krenzer since 1/27/22.

108.    On 8/18/22, with the goal of 1985(2) Intimidation of Krenzer & Fisher on Wilkins' request, John Doe ATF #1-2 & NYSP John Does' actions in furtherance of the conspiracy also satisfy the elements of the tort of trespass with: (1) the plaintiff's control of her apartment impeded on by (2) the ATF & NYSP John Does intentional, reckless, or wanton entry into the property without a warrant whatsoever on 8/18/22 at the direction of Wilkins & DeVito with no identifiable public safety goal & (3) lack of Krenzer or Fisher's permission for the entry to the property; & (4) harm to plaintiff including the emotional terror of physical assault in her home by a federal agent backed by a NYSP SWAT team & the terror knowing the state protects these criminals by Van Dellon's suppression of this bodycam footage (5) the defendants' misconduct was a substantial factor in expanding the continuing emotional harm to Krenzer since 1/27/22.

109.    Defendants Wilkins & Burke, Bonham, Kuzdzal, Fifield, Ellison, Turton, Prusak, Canino & others uncharged by name herein (Sgt Wagner of the JTTF, ATF agents Steve & Tim). "knowingly or negligently executed an invalid order of seizure or similar warrant" (Korsinsky v Rose, 120 AD3d 1307, 1309 [2d Dept 2014].

110.    "The State can be held liable [in trespass] for damages attending a [] search [] which is unreasonably conducted" (Onderdonk v State of New York, 170 Misc 2d at 162). False representations to acquire warrant are unreasonable. "For acts in the nature of trespass or civil assault or false imprisonment such as these, the fact of such violation alone is compensable in damages" (Pickett v. State).

111.    Plaintiff is entitled to relief in the form of exemplary damages, injunction restraining defendants against further trespass so she can sleep without fear, & any other such relief this Court finds just & proper.

**11TH CLAIM FOR RELIEF: 1ST AMENDMENT RETALIATION**

112.    This claim stands against ALL STATE DEFENDANTS directly, & FGLK as per *United States v. Price*; Defendants at all times relevant acting under color of state and/or federal law as INTERSTATE TASK FORCE.

113.    All previous statements & claims are incorporated within.

114.    Krenzer provides that (1) she engaged in Constitutionally protected activities of freedom of political speech & exchange of ideas, to freely practice her religion, to join the People & peaceably to assemble, to Free Association through forming a union, to the Right to Dissent & to petition the Government for a redress of grievances; that (2) the defendants' pattern of violent & unlawful actions over more than a year of Malicious Prosecution would 'chill a person of ordinary firmness' from continuing to engage in such protected activity, & have actively prevented her from attempting to continue in her protected behaviors; & (3) evidenced by materially false accusations based on perceived political affiliation, these protected activities were a substantial or motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions & an intent to chill intersectionality inclined free speech.

115.    Per *Butler v. City of Batavia*, Defendant's acts effectively chilled the Plaintiffs exercise of her First Amendment rights; for example Plaintiff & union have not been able to hold free educational gun safety or medical classes for the public since 2021, which ATF & NYSP posed as 'training a socialist militia' instead of basic public education with sovietpunk aesthetic. This directly implicates not only Plaintiff's First, but her community's 2nd amendment rights. The "core right to possess firearms", *Ezell I v City of Chicago* explained, "wouldn't mean much without the training & practice that make it effective." Id. at 704. *Ezell I* relied on *Heller*, which quoted an 1868 treatise on constitutional law observing that "to bear arms implies something more than the mere keeping; it implies the learning to handle & use them." (quoting Heller, 554 U.S. at 617).

116.    One issue at hand is plaintiff's right to freely associate with whomever she pleases & the extent to which bigoted state defendants & conspirators may infringe upon her rights, implicit in the First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment (*Sheldon v Tucker*, 364 U.S. 479), through prejudice & malice & wanton indifference to the law.

117.    Plaintiff & coworkers were threatened that continued operation would result in recurrent arrest as the malicious prosecution proceeded. "The threat of arrest may be sufficient where the threat interferes with a First Amendment right." Id.; see also *Black Lives Matter-Stockton Chapter v. San Joaquin Cty. Sheriff's Office*, 398 F.Supp.3d 660

(E.D. Cal. July 2, 2019). "A threat, with ruin behind it, may be as coercive as physical force" (*Nat. Protective Assn. v. Cumming* 170 N.Y. 315 (N.Y. 1902)).

118.    Plaintiff is entitled to compensatory, punitive & injunctive relief from this Court for violation of rights entitled by the US Constitution & defendants are liable for damages under 42 U.S.C. §1983, having caused special injury, plus any other relief the Court finds just & proper.

### 12TH CLAIM FOR RELIEF: ONGOING VIOLATION OF 2A RIGHTS

119.    This claim stands against NYSOMH (2013-2025) & Count 9 Defendants (2022-2025), & against FBI NICS Section for injunctive relief, Defendants at all times relevant acting under color of state and/or federal law.

120.    All previous statements & claims are incorporated within.

121.    Plaintiff's 2A rights were stripped without notice or avenue for remedy in 2013 by NYOMH NASA's misreporting scheme after Voluntary §9.13, with zero constitutionally adequate, non-discretionary state procedures available to remedy such special damages, despite the liberty interest clearly protected by Heller, McDonald, & Bruen. As Malcolm X rightfully stated, "You don't take your case to the criminal - you take your criminal to court!" and plaintiff refuses to legitimize an illegal NASA scheme & instead turns to this Court for the constitutional relief the law demands, challenging the constitutionality of NYOMH NASA's firearm disability relief process, which unlawfully operates as a discretionary, non-judicial substitute for the procedural due process required under the US Constitution & fails to provide clear, neutral, non-discretionary remedy to individuals misreported to the FBI's NICS.

122.    Krenzer (nor 1/2 Million+ proposed Mentally Healthy Class) was NOT adjudicated mentally defective or involuntarily committed to a mental institution per §922(g)(4), yet was reported to NICS by OMH NASA.

123.    Plaintiff was never subject of an ERPO, convicted of a felony, or involuntarily committed; as per *Bruen*, there is no historical precedent for NY's removal of plaintiff's 2A rights without due process; NYSOMH's Reporting policy was inherently

unconstitutional[6], & defendant's abuses have caused the plaintiff intense ongoing emotional & economic damages.

124.    The Due Process Clause of the Fourteenth Amendment extends the Second Amendment's right to keep & bear arms to the states, at least for traditional, lawful purposes such as self-defense. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). Plaintiff is a skilled hunter [Exhibit 5] engaged in commerce to be an Instructor/AECA military contractor, who wishes to engage in sporting competition, & use arms to defend her person, home & forge. These are all traditional, lawful, protected expressions of the freedoms guaranteed by 2A.

125.    *Doe v. Wolf* (16-6039 E.D. Pa. Aug. 23, 2017) held "the right to possess arms [] is no longer something that can be withdrawn by government on a permanent & irrevocable basis without due process".

126.    Plaintiff is happy to undergo a psychological evaluation to please Court, but can provide the 2018 psych evaluation from my tubal ligation surgery.

127.    Plaintiff offers her clean criminal record to please the Court [Exhibit 12].

128.    Plaintiff can point to multiple incidents from 2013 SA to machete robbery in Dec 2019, giving her special need to carry that would fulfill NY's old "proper cause" clause: https://www.democratandchronicle.com/story/news/local/victor/2019/12/21/police-man-r obbed-ogden-gas/2033658007/

129.    As a Keeper of the Way, plaintiff's ability to carry a pistol in accordance with her religion's first Tenet is undeniably burdened by NY's unconstitutional abuse, not just in New York but federally. Moving to a free state will not abate plaintiff's damages caused by NYSOMH unconstitutional NICS misreporting in 2013 or misuse of sealed malicious prosecution 22-07-085A/B maintained in violation of court order- only corrective audit. Under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb et seq, any government action to substantially burden religious exercise must 1) Further a compelling governmental interest, & 2) Use the least restrictive means of achieving that

---

[6] NY SAFE Act, MHL § 9.46: A violation of the Second Amendment & a barrier to mental health care by Sandra Richardson, RN, MS (https://www.scopeny2a.org/Briefings/12712491); *"Four months after the report, the court ruled in my favor & my pistol permit was "restored immediately." The court's conclusion of law deemed the MLH § 9.46 report to be "arbitrary, capricious or an abuse of discretion.""*

interest. Government efforts to disarm and harass Krenzer without *due process* or *threat* fail both prongs.

130.    Krenzer's right to acquire firearms protected by 2A/14A has been indefinitely restrained by NY misreporting her to NICS in 2013 so *she may never purchase a firearm anywhere*, & Krenzer understands it is also her right as a law abiding citizen & Keeper of the Way to also (a) engage in lawful interstate commerce of firearms with her Syndicate to secure her chosen livelihood, NYSOMH indefinitely barring her from acquiring an *FFL, NY Dealer, Gunsmithing* or *Ammo retailer permits*, or other out of state firearms permits & (b) utilize her 1st Amendment to educate her community in gun safety, self defense & hunting, indefinitely barring her from acquiring *licensing as a duly authorized instructor* in NY, & (c) engage in sponsored competition, by indefinitely barring her acquiring *NY semi-auto rifle permit*, *Possess on Premises* or *Possess/Carry During Employment handgun permit*, or (d) legally train & religiously carry for self defense under Tenet I, barring acquiring a *Concealed Carry permit*, & (e) hunt or engage in any protected purpose with firearms as a lawful citizen without arbitrary & malicious government interference & unlawful seizure, established rights duly protected by Krenzer's 1st, 2nd, 4th, 5th/14th.

131.    Post *Heller & Bruen*, 2A is rightfully read to confer a personal right to "keep & bear arms," & NYSOMH's unconstitutional misreporting to NICS in 2013 has indefinitely restricted Krenzer's Second Amendment rights in every state, & the remedy of individual audit as seen in *McKay* is an unacceptable repair as Krenzer must on religious, political & professional grounds demand to assert her right as an affected individual engaged in interstate commerce to protect her clients & her Mentally Healthy Class.

132.    After *Teixeira*, Federal courts outside of the Ninth Circuit's jurisdiction are free to decide in the first instance (1) how to evaluate claims alleging interference with the Second Amendment right to acquire firearms, & (2) whether the Second Amendment protects the commercial sale of arms independently. Plaintiff raises the questions: (1) do NY's still-discretionary semi-auto rifle & pistol permitting schemes, NICS misreporting scheme, targeting of FFLs for malicious prosecution, and/or SAFE Act restrictions on common-use arms interfere with a private citizen's 2A right to acquire arms under *Bruen*, and (2) does Krenzer's status as a lawful citizen with (a) inalienable 2A rights, (b) religious rights as a Keeper of the Way, & (c) engagement in lawful interstate commerce at a licensed workers union grant her the right to be free from malicious state interference in interstate commerce, fabrication of evidence & false statements, unlawful seizure, malicious prosecution & chilling of her protected exercises?

133.    The Court must consider that in 2013 NYSOMH's unconstitutional NICS reporting policy applied to Krenzer, without due process, the indefinite incorrect "involuntary commitment" status which is equivalent to a felony conviction in its effects on restriction to a person's constitutional rights. Without a trial, a hearing, or even notice provided by NY, like at least ½ Million+ others, Krenzer was punished as if she was a violent felon for voluntarily seeking the aid of a professional after a tragic, traumatic event. *Ingraham v. Wright* (430 US at 669 n.37.) held "some punishments, though not labelled 'criminal' by the State, may be sufficiently analogous to criminal punishments in the circumstances in which they are administered to justify application of the Eighth Amendment.'" Indefinite deprivation of 2nd Amendment rights via the NICS is- beyond "sufficiently analogous"- a direct application of the common punishment for a convicted felon, utilizing a national reporting system of the criminal law function of the federal & state governments.

134.    In interpreting the Eighth Amendment, it regarded as a precept of justice that punishment for crime should be graduated & proportioned to the offense. Krenzer, nor any other Voluntary admission during the course of NYSOMH's unconstitutional NICS reporting scheme, committed or were tried for a crime in the course of visiting a NY hospital; *any* punishment for seeking mental health treatment or therapy is cruel & unusual, indecent & inhumane. This is also indefinite, notice-devoid, felony-conviction equivalent punishment that, as evidenced by Krenzer's damages, will be further weaponized as the policy of corrupt law enforcement & conspirators like Vaas within NYSOMH to acquire junk warrants, unlawfully arrest, rob, maliciously prosecute & attempt to imprison/enslave lawful New Yorkers. The state acquired over $13M in federal funds to set up at least ½ Million+ citizens for future suffering via baseless & manufactured felony firearms prosecution to feed its Prison-Industrial-Complex.

135.    Per the information admitted by Dr. Marino in the *McKay* case, Krenzer & her ½ Million+ member class of similarly wounded citizens have all faced these circumstances:

> Sometime before [Voluntary Plaintiff's] discharge, [the doctor] made an online report in compliance with the NY Safe Act MHL §9.46(b) that [Plaintiff] had entered the mental health unit. It was this report that triggered the Safe Act report that the State Police eventually sent to the Court & to the [proper] County Clerk [*note: in the case of McKay & other <1% of Voluntary Patients who had a pistol permit at the time only, Krenzer & the other 99% of patients without a permit at the time have still not been notified by NYOMH*].

Dr. Marino testified that "every person that comes into the Mental Health Unit is registered, & I sign that they've come into the Hospital". He testified that the document that he checks off does not indicate whether or not the patient has been determined to have been involuntarily admitted or that she has a mental defect. Dr. Marino did not recall the exact wording of the form, but he said there was not an option on the form that he could check "whether they were involuntarily or voluntarily, or committed, or deficient, or anything else, it's just a generated - computer generated form that the patient was in, the day & time that I saw them. But it does not give me — it does not allow for anything other than that they were admitted".

Dr, Marino testified further, "I am signing it every day, every patient that comes into the Hospital, & it's a generic form that does not call for their diagnosis, does not call for any differentiation, whether they're in Hospital voluntarily, or involuntary, just that they came into the Hospital, the date, and I signed that". [In Krenzer's case, this 2013 form described by Marino was provided by NYSOHM Vaas to NYSP along with a non-doctor letter incorrectly stating Krenzer was "involuntarily committed" as evidence to allow for her unlawful arrest & malicious prosecution].

136.   Krenzer could not know about the unconstitutional 2013 report to NICS until 2021 when she was denied on a background check for an AR lower attempting to learn more about her LLC's products (this lower was never transferred into Krenzer's possession by FFL & assistance was requested from Wilkins as to if Krenzer had to immediately quit the LLC to which Wilkins replied she could stay in her Secretary-Treasurer position as she was not an FFL- but then he concocted lies about a conservatorship & insanity & drug addiction & unreported FFL accusations to revoke license). Krenzer pursued Wilkins direction to NICS Appeals; NICS agent mentioned directly NYSOMH misreporting policy as a common cause of Constitutional damage to New York citizens & likely issue.

137.   The facts of this case & the NYSOMH misreporting scheme are inexorably linked to the *McKay* case, *Susman vs Sullivan & Richey v. Sullivan et al* (1:23-cv-00344). The difficulty of the Class members in obtaining justice in these cases consistently face challenges through NY's use of administrative minutae, "quasijudicial immunity", deliberate procedural delay & other unethical means to deprive claimants restoration of fundamental rights under color of law, constituting constructive denial of due process & may rise to retaliatory deprivation of rights in violation of the First, Second, & Fourteenth

Amendments (*Monell v. Dept. of Social Services*, 436 U.S. 658 (1978); *Gomez v. Toledo*, 446 U.S. 635 (1980)).

138.    Plaintiff (and the entire proposed Mentally Healthy Class), is entitled to compensatory damages & injunctive relief for more than a decade of constitutional rights abuses by New York Office of Mental Health, including appointment of counsel to represent the Class per N.Y. GL ch. 123, § 9 & N.Y. Jud. Law §35(1)(a), with an Order from this Court directing NYS & FBI to audit & correct OMH, SAFE & NICS records etc, with written personal apology to all so affected, plus any other relief as this Court finds just & proper.

### § 925A REMEDY FOR ERRONEOUS DENIAL OF FIREARM

139.    Plaintiff, a person denied a firearm pursuant to subsection (t) of section 922— (1) due to the provision of erroneous information relating to the person by any State or political subdivision thereof, or by the national instant criminal background check system established under section 103 of the Brady Handgun Violence Prevention Act; or (2) who was not prohibited from receipt of a firearm pursuant to subsection (g) or (n) of section 922, may bring an action against the State or political subdivision responsible for providing the erroneous information or responsible for denying the transfer (herein NYSOMH), or against the United States (FBI NICS Section), as the case may be, for an order directing that the erroneous information be corrected, as erroneous reporting itself was a concrete, particularized injury-in-fact. In any action under this section, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs. (Added Pub. L. 103–159, title I, §104(a), Nov. 30, 1993, 107 Stat. 1543.)

140.    Plaintiff, by virtue of industry profession affected by the unconstitutional policy, is also a rightful class representative of the 1/2 Million+ other citizens (each a potential customer) currently un/knowingly affected by NYSOMH's profitable conspiracy against rights and a protected class masquerading as public safety & exposed in *McKay, Susman, Richey, etc.*

141.    Under *Bruen*, gun restrictions must be justified by a historical analogue & there is no Founding-era tradition of disarming someone based on a voluntary, non-judicial, temporary medical observation- especially without due process or a court order. The Founders did not enact categorical firearm bans based on mental health status & disarmament was typically tied to perceptions of violent social threat not perceived mental illness or even "lunacy"; there is no 1791 statutory analogue to 922(g)(4).

142.    In 1868 Reconstruction-era New York, there was no statute prohibiting firearm possession based on mental illness, & no law akin to § 922(g)(4) existed in the Revised Statutes of the State of New York (1867-1868), which addressed confinement of the insane under Title 3, Chapter 20, imposed no disarmament provision but required a

county judge or justice of the Supreme Court to authorize confinement of the person alleged to be insane, based on affidavits or certificates of *two reputable physicians*, verifying the person was insane & in need of institutional care for Judge's adjudication (forerunners of today's Mental Hygiene Law § 9.33 & § 9.35 procedures).

143.    Section 922(g)(4) lacks necessary historical grounding as applied to emergency observation statutes such as MHL §§ 9.13, 9.39, 9.46 that lack any judicial adjudication, & therefore these statutes fail the *Bruen* test & must be held unconstitutional as applied to Plaintiff & all Class members so similarly situated.

144.    The burden of proof to validate any "involuntary commitment" report to NICS is on New York: produce the x2 certifications by physicians & associated Court order adjudicating institutionalization from Class member's Voluntary visit to prove the "Involuntary Commitment" claim true.

145.    Further, under *Bruen* the NICS background check system established in 1993 is unconstitutional because it burdens the core Second Amendment right of law-abiding citizens like Krenzer to keep & bear arms without demonstrating any grounding in the Nation's historical tradition of firearm regulation. At the time of the Founding, there were no centralized databases, background checks, or pre-purchase screening mechanisms, & certainly no indefinitely maintained lists of citizens' firearms transactions, nor regulatory schemes allowing state actors to secretly & systemically strip rights without due process & avoid redress of citizens rights hiding behind "statutory schemes"; thus, requiring government pre-approval to exercise a fundamental constitutional right imposes an impermissible prior restraint. Since Bruen rejected public safety interest-balancing & requires historical analogues from 1791 or 1868, & none exist for NICS-style regulation, the NICS system fails the test & should be struck down as unconstitutional.

146.    NY's manipulation of 922(g)(4) to apply lifetime disabilities those not properly "involuntarily committed to a mental institution" & denial of redress processes through statutory obstacles (e.g., MHL §§ 7.09/33.13 being used to deny redress without due process) fail historical test unless the state can show founding-era analogs. They cannot.

147.    Plaintiff is entitled to corrective action restoring status & rights in state & federal systems, including order directing full corrective audit & furnishing Krenzer NY CC & Semiautomatic Rifle Permits without delay or cost, plus compensatory & punitive damages against defendants for unconstitutional reporting policy leading to erroneous

NICS denial, plus compensatory & punitive damages against Task Force defendants who weaponized 2013 misreporting to fabricate evidence to emotionally & economically damage Krenzer, her family & LLC & deny her & her community's 2A rights- this 925A violation & its conspiratorial weaponization far more than a casual cause of over 3 years of plaintiff's daily constitutional suffering.

## 13TH CLAIM FOR RELIEF: INTENTIONAL INFLICTION EMOTIONAL DISTRESS

148.   This claim stands against ALL DEFENDANTS, & FGLK as per *United States v. Price*; Defendants at all times relevant acting under color of state & federal law. All previous statements & claims are incorporated within.

149.   The facts serve to establish a Tort of Intentional Infliction of Emotional Distress as (1) all defendants & conspirators acted intentionally (Wilkins & ATF conspirators, Bonham & NYSP conspirators, Ritts' Office, Vaas, Finger Lakes Railway, Cirencione) within the conspiracy to abduct, rob & maliciously prosecute or recklessly & negligently (Mowers, Keefe) to maliciously prosecute; (2) the defendant's conduct- from Holocaust Remembrance Day abduction through malicious prosecution & 8/18/22 intimidation attempt, & on to the current refusal of return of property & continuing malicious prosecutions under 22-07-085A/B [see 415 Update] is extreme & outrageous, bringing shame & public distrust to multiple state agencies & involving the attentions of the FBI PCU investigating "Unconstitutional Police Pattern & Practice"; & (3) the defendants' conspiratorial acts & misconduct are directly the cause (4) of plaintiff's severe emotional distress, stealing from her a livelihood & the home & IVF children the fruits of her labor were bearing, while cutting her off from enjoying the expression of all aspects of her religion, severely stunting her enjoyment of life & liberty for 1000+ days.

150.   Justice Harlan recognized: "[T]he full scope of the liberty guaranteed by the Due Process Clause cannot be found in or limited by the precise terms of the specific guarantees elsewhere provided in the Constitution. This `liberty´ is not a series of isolated points pricked out in terms of the taking of property; the freedom of speech, press, & religion; the right to keep & bear arms; the freedom from unreasonable searches & seizures; & so on. It is a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions & purposeless restraints, . . . & which also recognizes, what a reasonable & sensitive judgement must, that certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgment." *Poe v. Ullman,* [367 U.S. 497, 543 (1961)].

151.   Emotional distress damages as an adjunct, or "parasitic," to recognized torts is allowed (see, e.g., *Garrison v Sun Print. Publ. Assn.*, 207 N.Y. 1, 8 [defamation]).

152.     Plaintiff's **Loss of Chance Tort** is linked to the infliction of emotional distress;

153.     The plaintiff did not just lose her livelihood, rights, security & comforts to defendants' unlawful acts & malicious prosecution, but ability to continue her fertility treatments to have babies. Plaintiff would have had twins in March 2023 & be onto her second IVF pregnancy at original filing 2/21/24 without defendants' criminal interference with her rights & livelihood. **Loss of chance doctrine tort** is established by traditional elements of:

 (1) the positive outcome of the couple's favorable IVF treatments dropping to 0% conjoined with plaintiff's emotional injury from loss of motherhood, economic hardship, pain & suffering caused by a (2) breach of a duty of care by Charles Vaas & his principal NYSOMH in conspiracy with Bonham & Task Force to violate plaintiff's rights & seize her livelihood under color of law; & (3) direct causality between NYSOMH & Vaas' breaches & plaintiff's personal injury, mental anguish & loss of chance to have children via IVF treatment to unlawful seizure & malicious prosecution.

154.     Post 1/27/22, grief & terror rendered the plaintiff often incapable of getting out of bed, sleeping past noon on most days, avoiding responsibilities, procrastinating, avoiding her education & syndicate work. Plaintiff experiences trauma responses (panic & severe anxiety) near railroad tracks since 1/27/22, terrified of repeat nazi-style abduction by her government, especially as since 10/14/22-2/7/25 Siragusa made clear what evils police commit don't matter & they'll be protected committing more,  while 12/5/24-4/15/25 proved the Task Force is actively ignoring court orders to continue their failed malicious prosecution.

155.     Plaintiff's requested award from FLGK works to mitigate this fear over time via pleasant exposure therapy.

156.     As a result of seizure damages to her livelihood, Plaintiff was not able to afford to enjoy life, to go on dates, see a movie or travel to visit family, let alone pay rent or grocery shop thru 23-24. Secondary malicious prosecution CR-13148-24 robbed holy articles necessary for 12/13/24 wedding.

157.     Plaintiff & her partner both now experience intense insomnia, her partner staying awake on lookout while she sleeps to prevent another abduction. Plaintiffs request for Restraining Orders against Defendants & return of all property would help in part to alleviate her fears of continued unconstitutional, criminally organized acts.

158.    Plaintiff has experienced profound social isolation as a result of defendants' crimes, terrified to regularly leave home after her abduction until case dismissal on 2/14/23. Plaintiff has been isolated from her friends & community, unable to host educational safety events, participate in community aid, participate in the free exercise of her religion, or in the hunting culture of her family.

159.    Since dismissal of malicious prosecution on 2/14/23, the defendants, their conspirators, & the ineffectual & corrupt government of New York have not provided plaintiff, her partner or her LLC with any sort of relief from damages, including Siragusa. Landlord filed for eviction for plaintiff's inability to pay rent due to seizure of livelihood & property [Exhibit ] & Siragusa denied pauperis, leaving Krenzer feeling hopeless & letting these claims languish. Eviction was worked out with landlord as Krenzer got job for FLDDSO OPWDD to pay for it/this case, which she left March 2025.

160.    On 1/27/22 Krenzer was a small business owner who had an international business partnership to domestically manufacture ammunition, actively touring properties for her new factory with outbuildings for workers domicile & a domestic violence shelter offering mothers the financial freedom & safety to leave an abuser behind. Plaintiffs new home & IVF family, good jobs, & liberated DV survivors is what the Task Force obliterated, not criminals, "terrorism", a "militia" or a "Russian asset".

161.    Plaintiff is entitled to relief, including but not limited to an award of damages & injunction from this Court ordering Institutional Apologies to Krenzer & her Syndicate provided by "Interstate Task Force on Illegal Guns" conspirator agencies including but not limited to (a) ATF, (b) SIU, (c) NYSP, (d) Ontario DA's office, (e) NYSOMH / Office of NICS Appeals & SAFE Act, (f) FGLK, (g) Ontario Clerks Office, (h) Ontario Sheriff, (i) MCAC, (j) JTTF, et al, to issue a formal written apology to Syndicate's religious, racial, cultural communities- including but not limited to the Queer, Jewish, Romani, Black, & Keeper communities- for their use of tactics reminiscent of historical fascist abuses, in legal contravention of constitutional obligations & ethical public service.

### 14TH CLAIM FOR RELIEF: 1983(2) INTIMIDATION

162.    This claim stands against WILKINS, DEVITO, VAN DELLON, 8/18/22 ATF JOHN DOES & 8/18/22 NYSP JOHN DOES, & to all defendants via *Pinkerton.* Defendants at all times relevant were acting under color of state & federal law. All previous statements & claims are incorporated within.

163.    As per 1985(2), Obstructing justice; intimidating party, witness, (a)(1) 8/18/22 defendants conspired to deter, by warrantless home entry, assault, intimidation & threatening the plaintiff & her partner from pursuing this case, its sister civil rights case & LLC's commercial art.78/RICO lawsuit; (a)(2) 8/18/22 defendants attempted to prevent the plaintiff from attending such court or from testifying to any matter pending therein, freely & fully, or to injure such party or witness in her person or property on account of her having so attended Ontario Court & testified to the ATF hearing (inso striking down Defendants' false accusations of mental health disability & unreported employment, making criminal Wilkins' fear he was liable for torts enough to retaliate 8/18/22); (a)(3) Defendants Wilkins & Bonham with the aid of Van Dellon influenced the verdict, presentment & indictment of the Ontario Grand Jury; & (b)(1) all defendants conspired for the purpose of impeding, obstructing, or defeating, in any manner, the due course of justice, (b)(2) with intent to deny to plaintiff, her union partners & clients the equal protection of the laws & (b)(3) to injure her livelihood & interstate commerce, personal & professional reputation, emotional wellbeing & property in retaliation for lawfully operating to the benefit of the 1A & 2A rights of underserved classes- minorities, LGBTQ, women, the religious & leftists- promised equal protection of the laws; & (b)(4) the plaintiff's rights & livelihood were irreparably damaged as a result of defendants' conspiracy.

164.    On 8/16/22, Wilkins hand delivered a Zero Tolerance revocation on false basis that Krenzer was "non-reported RP" & was told, per the doc provided, that he would be taken to federal court to contest his false statements [22-CV-6440, 10/14/22]; after couple promised to expose Wilkins' lies to the courts, he ran crying to DeVito & sent SWAT team on 8/18/22.

165.    Van Dellon's suppression of 8/18/22 bodycam footage at Wilkin's behest stated that the bodycam was in regards to a "separate federal matter" (ATF Kangaroo), directly related to the initial filing of 22-CV-6440 for an Article 78 de novo, to which plaintiff is witness & victim, implicating Van Dellon in the 1985(2) by his outrageous accusations of Krenzer being a dangerous "sovereign citizen" & having made Wilkins "fear for his life" (false material statements that Ontario Court rejected immediately) to attempt to remove her from court & intimidate her.

166.    The standard of outrageous conduct is "strict," "rigorous" & "difficult to satisfy". However, that is not the case when there is a "deliberate & malicious campaign of harassment or intimidation" (*Nader v. General Motors Corp.*, 25 N.Y.2d 560, 569, 307 N.Y.S.2d 647, 255 N.E.2d 765 [1970] ; see also 164 *Mulberry St. Corp. v. Columbia Univ.*, 4 A.D.3d 49, 771 N.Y.S.2d 16 [1st Dept. 2004].

167.    Plaintiff is entitled to damages & injunctive relief, including but not limited to compensatory & punitive damages, an Order restraining defendants from further unlawful acts against Krenzer, & any other relief this Court finds just & proper.

## 15TH CLAIM FOR RELIEF: 1985(3) DEPRIVATION OF RIGHTS

168.    This claim stands against NYSOMH VAAS & ALL DEFENDANTS, & FGLK as per *United States v. Price*, with Defendants at all times relevant acting under color of state and/or federal law. All previous statements & claims are incorporated within.

169.    With the success of defendants' conspiracy on 1/27/22 & defendant's tortious acts since, the facts establish an actionable **1985(3) Depriving persons of rights or privileges** claim, establishing that (1) the defendants engaged in conspiracy to deprive the plaintiff, her partner & her clients of the equal protection of the laws;  (2) each defendant engaged in at least one act in furtherance of the conspiracy, while others like Bonham or Wilkins engaged in many acts of misconduct, misrepresentations & conspiratorial communications; & (3) the plaintiff's rights & livelihood were irreparably damaged by the conspiracy.

170.    As construed to protect Fourteenth Amendment rights § 241 (and one would hope its civil analog 1985) is not unconstitutionally vague, since, by virtue of its being a conspiracy statute it operates only against an offender acting with specific intent to infringe the right in question (*Screws v. United States*, 325 U. S. 91). The rights in question, both by NYSOMH in 2013 & again by conspiratorial defendants 1/27/22-today, are the 2nd, 5th, 8th, & 14th, plus Krenzer's 1st & 4th.

171.    A combination of invidiously discriminatory animus arises from the Discovery submitted by defendants in the malicious prosecution & the act of FLGK train capture: anti-black, antisemitic & antiziganic, alienage (with a national origin based hate crime), red scare mccarthyist Political discrimination, religious, homophobic, & perceived Disability-Based [Exhibits 2, 4, 14, 16, 22-31].

172.    Defendants targeted Plaintiff's 1st, 2nd, 4th & 14th amendments to attack her livelihood & assets, & by extension of targeting a licensed gunshop dedicated to serving the underserved classes, targeted the 2nd amendment rights of LLC's clients & these protected classes at large.

173.    Krenzer & her partners' exercise of lawful, protected activities under the 1st & 2nd amendment were feared by bigoted defendants & held as "probable cause" was the Plaintiff & the intersectional communities she served having & *peacefully exercising equal rights*, same as *Dred Scott;* "recognised as citizens…, the right to… singly or in

companies, without pass or passport, & without obstruction... to go where they pleased at
every hour of the day or night without molestation, unless they committed some violation
of law for which a white man would be punished; ...the full liberty of speech in public &
in private upon all subjects upon which its own citizens might speak; to hold public
meetings upon political affairs, & to keep & carry arms wherever they went... & all of
this would be done in the face of the subject race of the same color, both free & slaves, &
inevitably producing discontent & insubordination among them, & endangering the peace
& safety of the State."

174.    The Plaintiff's Holocaust Remembrance Day abduction with borrowed FLGK train
cannot be discounted as coincidence under the totality of circumstances & malice already
being evidenced by Wilkins & Bonham's 210.35 Sworn False Statements. Cases like *N.Y.
State Corr. Officers & Police Benevolent Ass'n v. New York* 94 N.Y.2d 321 (N.Y. 1999),
*Weicherding v. Riegel* 160 F.3d 1139 (7th Cir. 1998), & *Lawrenz v. James* 852 F. Supp.
986 (M.D. Fla. 1994) show the ideological importance of racist actions & hate crimes on
memorial dates to white supremacist types.

175.    In *DeShaney vs. Winnebago & Town of Castle Rock vs. Gonzales*, the supreme court
has ruled that police agencies are not obligated to provide protection of citizens.
Therefore, Plaintiff offers two logical propositions: (a) she & her workers union are not
obligated to serve the police as a part of "the People" & (b) her LLC offers clients more
reliable protection than a clearly bigoted police force ever could. Defendants' conspiracy
was an assault on the 2A rights of thousands across America, evidenced by various
class-based animus with one common denominator: groups hated by white supremacists
& served by the Red Right Hand.

176.    Plaintiff is entitled to relief from ongoing civil rights violations including but not
limited to injunction from this court restraining defendants from further damaging
plaintiff & her aggrieved clients, an Order appointing Representation of Counsel &
certifying plaintiff's class action, & any other relief this Court finds just & proper.

## 16TH CLAIM FOR RELIEF: FTCA

177.    This claim stands against the United States for WILKINS, BONHAM, ATF JOHN
DOE #1 & 2, BURKE, SZWEJBKA, DEVITO's wanton and malicious acts, defendants
at all times relevant acting under color of federal law in furtherance of unconstitutional

"Zero Tolerance Policy" objectives or conspire to act directly or use their authority to induce others to act under color of state law in furtherance of the aforementioned INTERSTATE TASK FORCE objectives outside the scope of its enterprise, Wilkins already found on x2 counts 210.35 to Grand Jury in the 2nd to unlawfully indict.

178.    All previous statements & tort claims are incorporated within (Civil Conspiracy, Fraudulent Misrepresentation, 1983 Deprivation of Rights, 1985 Intimidation, Breaches of Fiduciary Duty, Trespass, Unlawful Imprisonment, Malicious Prosecution, Conversion, Infliction of Emotional Distress, Loss of Chance, Continuing Malicious Prosecution, Abuse of Process, Continuing Interference in 2A Rights, etc)

179.    Sixth Circuit Court of Appeals *Mynatt v. United States* (F.4th 2022WL3335690; 8/12/22), holds that intentionally placing false evidence before a prosecutor or a court is not a protected discretionary act. Wilkins has furnished/presented false evidence about the plaintiff on multiple occasions to both Wayne & Ontario Courts & the ATF's revocation or civil fine hearing (which was the equivalent of a trial but with zero due process) establishing a pattern of constitutional abuses, dishonesty & misconduct resulting in irreparable damages to plaintiff & her livelihood protected by the 14th. Bonham provided the same to state courts.

180.    On 8/18/22, the unlawful SWAT team intimidation attempt against the plaintiff by ATF John Doe #1&#2 & NYSP John Does on Wilkins' behalf and approved by DeVito - seeking to terrorize coplaintiffs into not pursuing charges against him- was certainly not a protected "discretionary act".

181.    Wilkin's having Van Dellon frame the plaintiff as a "dangerous communist" and "sovereign citizen" & say she made Wilkins "fear for his life" trying to maliciously get an Order of Protection against her was certainly not a protected "discretionary act", & despite the judge dismissing it, the claim was made on record & should be entered into Discovery [with full 22-07-085A/B records]. According to LLC's defense counsels, this tactic was to keep Plaintiff & partner out of the courtroom & deny their 6th Amendment. Van Dellon knowingly presenting these false representations to Court is misconduct in the same vein but even more deeply unethical than that which DA Ritts' Office was admonished for in 2017.[7]

---

[7] Daily Messenger 11/14/17, *Court: Ritts guilty of misconduct "Former political opponent responds to Ontario County DA-elect being cited with prosecutorial misconduct"* https://www.mpnnow.com/story/news/politics/county/2017/11/14/court-ritts-guilty-misconduct/17044738007/

182.    On 12/27/23, SF-95 Form & associated documents presented by plaintiff's LLC to both ATF internal affairs & NY industry operations by the LLC's appropriate point of contact, covering the stolen property & worker's damages, including plaintiff's pain & suffering in excess of $5,000,000.00. Claim matured in June 2023 with ATF refusal to pay, Plaintiff had requested FTCA inclusion the day after maturation but was chilled.

183.    Plaintiff's constitutional rights, emotional wellbeing & her livelihood will have suffered from ATF Defendants' malicious acts & misconduct for 1,218 days without remedy on 5/29/25. One day was too many.

184.    Plaintiff is entitled to relief from via the FTCA including but not limited to compensatory & punitive damages in the amount of $5,000,000.00 for tortious acts, plus injunction from this court restraining ATF from damaging plaintiff henceforth, & any other relief this Court finds just & proper.

### PRAYER FOR RELIEF

185.    Plaintiff prays for judgment to repair the aforementioned abuses as follows:

186.    Award Plaintiff such preliminary injunctive & ancillary relief as may be necessary to avert the likelihood of plaintiff's further injury during the pendency of this action, not limited to temporary & preliminary injunctions properly sealing unlawfully maintained malicious prosecutions 22-07-085 and immediate restoration of Plaintiff's rights, property & livelihood to preserve possibility of effective final relief, including an Order for the Restoration of Firearms Rights, providing remedy for NYSOMH's 2013-2025 Violation of Plaintiff's Constitutional Rights.

187.    FURTHERMORE, pursuant to 28 U.S.C. § 2202 & Fed. R. Civ. P. 65, it is appropriate & hereby requested that the Court issue a permanent injunction & prohibiting Defendants from continuing to damage the Plaintiff or any other citizen in such a manner henceforth. Absent injunctive relief by this Court, Defendants will continue to injure plaintiff, her partners, LLC & clients, plus the greater proposed Mentally Healthy Class as described in Krenzer's Motion for Class certification, with the defendants continuing to reap unjust employ, bonuses, promotion, political affluence & enrichment under color of law while harming the public interest & destroying lives & public faith in government.

188.    FURTHERMORE, in part to make whole, a compensatory award for lost wages, inconvenience & personal economic damages at $1,312.00 per diem from 1/27/22 to date of Judgement.

189.    FURTHERMORE, in part to make whole, an award for general damages from defendants acting under color of state law for intense & continuing pain & suffering, mental anguish, emotional distress, reduced quality of life, loss of chance & access to medical treatment, & other damages to the plaintiff in excess of $5,000,000.00.

190.    FURTHERMORE, in part to make plaintiff whole, a compensatory FTCA award against the United States for continuing pain & suffering caused by ATF defendants' unconstitutional actions & abuses in excess of $5,000,000.00.

191.    FURTHERMORE, in part to make plaintiff whole & in part to restore public trust in the government, an injunction from this court barring Finger Lakes Railway & its management or employees from further aiding & abetting police in kidnapping citizens under color of law like Nazis under any circumstances, & an award of compensatory & punitive damages for the company's role in plaintiff's unlawful abduction & infliction of pain & suffering in excess of $5,000,000.00.  Plaintiff is agreeable to an alternative mediation of ⅓ of this award in addition to (a) one luxury passenger car & (b) one freight car with (c) waived fees & tariffs for 20 years to help her overcome the anxious terror now instilled by trains via pleasant exposure therapy & boost her small business through guerilla advertising, plus the (d) termination of management who conspired with defendants (Tammy Spina said she was the police liaison when Fisher called as 'reporter', put us on hold when told of 210.35s, then said she actually couldn't answer "to avoid incriminating 'the individual'"), & (e) a 5% ownership stake of FGLK with a Public Oversight board position at the salary of the terminated manager.

192.    FURTHERMORE, in part to make whole, an order from this court to the ATF, NYSP, NYSOMH, MCAC, FLGK, Ontario DA & Ontario Sheriff to publicly publish formal apologies to plaintiff & her partner, LLC & its wronged clients in the legal section of the largest local Newspaper & online, restoring her good name, dignity & reputation.

193.    FURTHERMORE, in part to make whole, an award for all costs & reasonable attorneys' fees in this case as pursuant to § 925A & 42 U.S.C. §§ 1983 & 1988.

194.    FURTHERMORE, Plaintiff reserves the right to submit additional charges & motions as necessary.

**WHEREFORE**, for the reasons stated above, Plaintiff respectfully requests that the Court grant the relief set forth herein, together with such other & further relief which as to the Court may seem just & proper.

DATED: 2/21/2024 / UPDATED: 5/1/2025 SUBMITTED: 5 /29 / 2025

Respectfully Submitted,

*Pro Se*

Updated Telephone: 622-639-0537

TO: Honorable Judge Vacca
     US District Court
     Western District of New York